IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEBORAH Y. EDWARDS,

    Plaintiff,

      v.

GWINNETT COUNTY SCHOOL
DISTRICT, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:11-CV-2581-TWT

## OPINION AND ORDER

This is an action asserting a retaliation claim under the Rehabilitation Act. It is before the Court on the Defendant Gwinnett County School District's Motion for Summary Judgment [Doc. 48]. For the reasons set forth below, the Defendant's Motion for Summary Judgment [Doc. 48] is GRANTED.

## I. Background

The Plaintiff, Deborah Edwards, was a special education teacher at Snellville Middle School of the Gwinnett County School District. (Def.'s Statement of Material Facts ¶ 12.) As part of her duties, the Plaintiff was responsible for maintaining paperwork on each of her special education students. (Id. ¶¶ 19, 21.) This paperwork was to be filled out and filed in a manner compliant with federal, state, and District

regulations. (<u>Id.</u> ¶ 20.) The paperwork included Individualized Education Programs, or IEPs. (<u>Id.</u> ¶ 21.) IEPs are written programs created for each disabled student that lay out an academic plan tailored to the student's strengths and needs. These programs are formed collaboratively with the parents of the disabled children and are generally to be completed before the academic year.

As early as 2008, the administration of Snellville Middle School reported problems with the Plaintiff's paperwork. On March 21, 2008, then-Principal of Snellville Middle School Linda Boyd issued a letter of directive because of the Plaintiff's failure to complete her paperwork in a timely and compliant manner. (<u>Id.</u> ¶ 22; Boyd Aff., Attach. 1.) At the end of the 2008-2009 school year, problems arose regarding the Plaintiff's IEPs. After noticing mistakes on the Plaintiff's IEPs that required clerical edits, Special Education Assistant Principal Kay Michel instructed the Plaintiff to make the necessary edits by May 15, 2009. (Def.'s Statement of Material Facts ¶ 29.) The Plaintiff submitted the IEPs after the deadline. (<u>Id.</u> ¶ 30.) The IEPs were reviewed, and errors were again noted. (<u>Id.</u> ¶ 29.) The Plaintiff was asked to fix the errors and re-submit the IEPs by June 5, 2009. (<u>Id.</u> ¶ 32.) The Plaintiff failed to do so. (<u>Id.</u> ¶ 32.) She informed Michel that she could not make the edits without parental approval. (<u>Id.</u> ¶ 32.)

At the end of the 2008-2009 school year, Boyd left her post as Principal of Snellville Middle School (id. ¶ 14) and was replaced by Susan Downs. (Id. ¶ 34.) Prior to the start of the 2009-2010 school year, three teachers came in during the pre-planning period to fix errors in their IEPs. (Id. ¶ 41.) The Plaintiff did not. (Id. ¶ 41.) On August 7, 2009, the last day of the pre-planning period, the Plaintiff sent an e-mail to Downs and Michel informing them that her IEPs were not finished. (Id. ¶ 41.) The Plaintiff was later confronted by Downs regarding her failure to submit the IEP forms on time. (Id. ¶ 43.) The Plaintiff alleges that she informed Downs that the IEPs were not completed because she had not acquired the necessary parental consent. (Pl.'s Statement of Material Facts ¶ 16.) Following this encounter, a letter of redirection was filed against the Plaintiff citing, *inter alia*, unprofessional conduct and a failure to submit paperwork in a timely and proper manner. (Def.'s Statement of Material Facts ¶ 44.)

On August 12, 2009, the Plaintiff was also placed on a Professional Development Plan ("PDP") which set certain expectations and also provided assistance in meeting them. (Id. ¶¶ 47-48.) On August 24, 2009, the Plaintiff asked for more time to complete her IEP forms. (Id. ¶ 45.) The Plaintiff was given more time, as well as a substitute teacher to cover her courses while she completed her forms. (Id.

¶ 45.) The Defendant alleges that the Plaintiff still failed to meet the requirements of the PDP, and also missed several meetings. (Id. ¶ 49.)

On January 15, 2010, Downs recommended to Human Resources that the Plaintiff's contract not be renewed. (Id. ¶ 52.) The Executive Director of Human Resources reviewed Downs' recommendation, and agreed to recommend a non-renewal of the Plaintiff's contract to the Superintendent. (Id. ¶¶ 53, 55.) The Plaintiff was informed of this. (Id. ¶ 55.) Because the Plaintiff was a tenured teacher, she was entitled to a hearing prior to non-renewal. (Id. ¶ 54.) However, the Plaintiff submitted her resignation before the Board of Education considered the non-renewal of her contract. (Id. ¶ 56.) On March 19, 2010, the Defendant was notified by the Georgia Professional Standards Commission that the Plaintiff had filed a complaint against Downs, Michel, and Boyd. (Id. ¶ 83.) The Defendant was asked to conduct an investigation and submit its findings. (Id. ¶¶ 84-85.) Dr. Sid Camp reviewed the investigation report and found that the Plaintiff's allegations were not supported by the evidence. (Id. ¶ 85.) At the conclusion of the 2009-2010 school year, the Plaintiff was no longer affiliated with Snellville Middle School. (Id. ¶ 88.)

The Plaintiff alleges that she opposed various practices that she believed were unlawful. She alleges that she complained about unqualified teachers teaching special education classes, the lack of necessary paraprofessionals, and the placement of

special education students in improper classes. (Pl.'s Statement of Material Facts ¶ 5.) She also alleges that she refused to alter the IEPs without parental consent because to do so would violate federal law. (Id. ¶¶ 11, 14, 30.) The Plaintiff alleges that the letter of redirection, her placement in the PDP, and the recommendation of non-renewal for her contract were acts of retaliation by Downs. The Plaintiff asserts claims under section 504 of the Rehabilitation Act, the Georgia Open Records Act, and the Georgia Whistleblower's Act. The Defendant moves for summary judgment on all claims.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there

must be a sufficient  showing that the jury could reasonably find for that party."

Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.1990).

The Defendant argues that because several factual claims by the Plaintiff rely on hearsay and unauthenticated documents, they may not be considered on a motion for summary judgment. "The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." Jones v. UPS Ground Freight, 683 F.3d 1283, 1293 (11th Cir. 2012) (internal quotation marks omitted). "Nevertheless, a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." Id. at 1293-94 (internal quotation marks omitted). Similarly, "courts may consider unauthenticated documents on a motion for summary judgment if it is apparent that they will be admissible at trial." Federal Ins. Co. v. United Community Banks, Inc., No. 2:08-cv-0128-RWS, 2010 WL 3842359, at *8 (N.D. Ga. Sept. 27, 2010) (internal quotation marks omitted). The Court will consider the challenged evidence in ruling on the Motion for Summary Judgment.

## III. Discussion

A. Section 504 of the Rehabilitation Act

"The Rehabilitation Act incorporates the anti-retaliation provision from . . . the [ADA]." Burgos-Stefanelli v. Secretary, U.S. Dept. of Homeland Sec., 410 Fed. Appx. 243, 245 (11th Cir. 2011). "Under the ADA's anti-retaliation provision, [n]o person shall discriminate against an individual because such individual has opposed any act or practice made unlawful by this chapter." Id. (internal quotation marks omitted). This provision is similar to the Title VII anti-retaliation provision. Id. Thus, "we assess retaliation claims pursuant to the Rehabilitation Act under the framework we use in assessing Title VII retaliation claims." Id.

When a plaintiff is relying on circumstantial evidence, the Court must "analyze the case using [a] shifting framework." Id. at 246. "[T]he plaintiff bears the initial burden of establishing a prima facie case" under section 504. Id. "To establish a prima facie case of retaliation, a plaintiff may show that: (1) she engaged in statutorily protected expression; (2) she suffered a materially adverse employment action; and (3) there was some causal relationship between the two events." Id. "Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." Id. "If the employer proffers such an explanation, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's explanation is merely pretext."

Id. As the United States Supreme Court recently clarified, the Plaintiff must ultimately establish that the protected expression was the but-for cause of the adverse employment action. University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517, 2533 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . [t]his requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.").

The Defendant makes three arguments in favor of summary judgment against the section 504 claim. First, the Defendant argues that the Plaintiff has failed to exhaust her administrative remedies. Second, the Defendant argues that the Plaintiff has failed to establish a prima facie case of retaliation. Third, the Defendant argues that it has provided a legitimate, non-retaliatory reason for the challenged actions and the Plaintiff has failed to establish pretext.

### 1. Administrative Exhaustion

The Individuals with Disabilities Education Act ("IDEA") imposes an exhaustion requirement on certain claims brought under section 504 of the Rehabilitation Act. See 20 U.S.C. § 1415(l). Generally, a claim brought under section 504 that could have been brought under IDEA is subject to the exhaustion requirement. See M.T.V. v. DeKalb County School Dist., 446 F.3d 1153, 1158 (11th

Cir. 2006). The purpose is to prevent plaintiffs from circumventing the IDEA by filing their claims under other federal statutes. <u>See</u> <u>id.</u> However, even if the exhaustion requirement applies to a claim, a plaintiff is excused "where resort to administrative remedies would be 1) futile or 2) inadequate." <u>Id.</u> at 1159 (internal quotation marks omitted).

The Plaintiff concedes that the IDEA exhaustion provision applies to her section 504 claim and instead argues that she is excused because the IDEA remedies would be inadequate.   The remedies available under IDEA are for disabled students and their parents. Other parties advocating on behalf of these students may not access these remedies. Consequently, the Plaintiff's retaliation claim is not subject to the IDEA's administrative exhaustion requirement.

The IDEA provision imposing an exhaustion requirement on certain section 504 claims states: "Nothing in this chapter shall be construed to limit . . . remedies available under . . . [section 504] . . . except that before the filing of a civil action under such laws *seeking relief that is also available under this subchapter*, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C. § 1415(l) (emphasis added). To support its argument that this exhaustion provision applies to the Plaintiff, the Defendant argues that the Plaintiff may seek relief under

IDEA. The Defendant cites subsection (b)(6), a provision concerning the initial filing of an administrative complaint: "The procedures required by this section shall include the following: . . . An opportunity for *any party* to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A) (emphasis added). The Defendant reads "any party" to mean any person. The Court reads "any party" to mean either the parent(s) of the disabled child *or* the local educational agency.

First, the text of section 1415 confirms this reading of subsection (b)(6). For example, subsection (f) states: "Whenever a complaint has been received under subsection (b)(6) . . . *the parents or the local educational agency involved in such complaint* shall have an opportunity . . .." 20 U.S.C. § 1415(f)(1)(A) (emphasis added). Second, other sources confirm this reading. The implementing federal regulation for subsection (b)(6) states: "(1) *A parent or a public agency* may file a due process complaint on any of the matters . . . relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child." 34 C.F.R. § 300.507(a) (emphasis added). The Third Circuit also alluded to a similar interpretation of subsection (b)(6). See Chambers ex rel. Chambers v. School Dist. Of Philadelphia Bd Of Educ., 587 F.3d 176, 182 (3d Cir. 2009) ("The IDEA

allows *any party -- the parent of a disabled child or the state* -- to file a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child[.]").   The third reason to read "any party" narrowly is that the two procedures that IDEA requires a party to exhaust -- subsections (f) and (g) -- are not open to persons such as the Plaintiff. Subsection (f) states that "[w]henever a complaint has been received under subsection (b)(6) or (k), *the parents or the local educational agency* involved in such complaint shall have an opportunity for an impartial due process hearing." 20 U.S.C. § 1415(f)(1)(A) (emphasis added). Subsection (g) states that "[i]f the hearing required by subsection (f) is conducted by a local educational agency, any party aggrieved . . . may appeal such findings and decision." 20 U.S.C. § 1415(g)(1). Because only a parent or a local educational agency can request a subsection (f) hearing, only a parent or a local educational agency can appeal under subsection (g). The Defendant's interpretation of "any party" would put the Plaintiff in an odd position. She could file an administrative complaint, yet could not seek a hearing on the complaint or appeal an adverse decision. In effect, she would be unable to exhaust the administrative remedies and take her section 504 claim to a district

court. The Court concludes that the administrative exhaustion provision of IDEA does not apply to the Plaintiff's section 504 claim.[1]

### 2. Prima Facie Case of Retaliation

The Defendant argues that the Plaintiff has not established a prima facie case of retaliation. First, the Defendant argues that the Plaintiff did not engage in statutorily protected expression. A person "engages in statutorily protected activity if [she] has opposed any . . . practice made unlawful by" section 504 of the Rehabilitation Act. See Morales v. Georgia Dept. of Human Resources, 446 Fed. Appx. 179, 183 (11th Cir. 2011). "[A] plaintiff's burden under this standard has both a subjective and an objective component." Little v. United Technologies, Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997). "A plaintiff must not only show that [she] subjectively (that is, in good faith) believed that his employer was engaged in unlawful . . . practices, but also that [her] belief was objectively reasonable in light of the facts and record presented." Id.

The Plaintiff asserts multiple instances of protected expression. The Plaintiff claims that she "complained that students were not placed in the proper special education classes . . . complained that teachers who were not qualified taught special

---

[1] The Defendant is correct that a retaliation claim may be brought under IDEA. However, the case cited by the Defendant concerned a retaliation claim brought by a parent of a disabled child. See M.T.V., 446 F.3d at 1158-59.

education classes . . . [and] complained about unsatisfactory paraprofessionals." (Pl.'s Statement of Material Facts ¶ 5.) The Plaintiff also claims that she resisted what she believed was an instruction to modify IEPs without parental consent. (Id. ¶¶ 14, 16, 18.) However, she only alleges that it was her resistance to modifying IEPs without parental consent that caused the retaliation by Downs. (Pl.'s Mem. Opp'n Mot. for Summ. J., at 18-19.) Consequently, the Court need only address whether that resistance constituted protected expression. The Defendant argues that the Plaintiff lacked a subjective, good faith belief that the conduct was unlawful because she never lodged a formal complaint. (Def.'s Br. Supp. Mot. Summ. J., at 11-12.) However, this is not the only way the Plaintiff may evince a subjective belief. The Plaintiff testified that she told both Michel and Downs that she believed complying with their requests would require modifying the IEPs without parental consent in violation of IDEA. The Defendant also argues that the Plaintiff's belief was objectively unreasonable because she was not expected to modify the IEPs without parental consent. (Def.'s Rep. Supp. Mot. Summ. J., at 8-9.) The Defendant alleges that it wanted its special education teachers to make the changes, and in the process obtain the necessary parental consent. Id. Crystal Mosley, the Plaintiff's former colleague, testified that she felt uncomfortable following Michel's orders at the end of the 2008-2009 school year

because she also felt it would require making modifications without parental consent.[2] (Mosley Aff., at 1.) The question is whether the Plaintiff's belief that she was being asked to make changes without parental consent was reasonable. See Meeks v. Computer Associates Intern., 15 F.3d 1013, 1021 (11th Cir. 1994) ("[T]he plaintiff 'need not prove the underlying claim . . . which led to her protest,' so long as she had a reasonable good faith belief . . .."). The Court cannot conclude as a matter of law that it was not.[3]

Second, the Defendant argues that there was not a materially adverse employment action. "A plaintiff must show that a reasonable employee would have found the challenged action materially adverse." Burgos-Stefanelli, 410 Fed. Appx. at 246 (internal quotation marks omitted). "The acts must be material and significant and not trivial." Id. "[A] materially adverse action is one that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

_____

[2] However, Mosley also testified that upon returning for the 2009-2010 school year, she met with Downs and she eventually secured parental consent and made the necessary changes to the IEPs. (Mosley Aff., at 2.)

[3] The Plaintiff alleges that she opposed a practice that she believed was unlawful under IDEA -- modifying IEPs without parental consent. However, to prevail on her section 504 claim, the Plaintiff must show that she had a good faith, reasonable belief that the practice was unlawful under the Rehabilitation Act. Although certain conduct may violate both the IDEA and the Rehabilitation Act, the Plaintiff supplies no reason why this practice is an example of such conduct. Nonetheless, the Defendant never makes this argument, thus the Court need not consider it at this stage.

<u>Id.</u> (internal quotation marks omitted). "[T]he significance of any given act of retaliation will often depend upon the particular circumstances." <u>Id.</u> (internal quotation marks omitted).

The Plaintiff alleges three adverse actions: (1) the letter of redirection; (2) her placement in a PDP; and (3) the recommendation of non-renewal. In challenging the first two alleged adverse actions, the Defendant argues that in order for conduct to rise to the level of "materially adverse," it must impact the terms, conditions, or privileges of employment. (Def.'s Br. Supp. Mot. Summ. J., at 13.) The Defendant argues that neither the letter of redirection nor the PDP had this effect, and thus neither was material and significant. (<u>Id.</u> at 14.) To be sure, "actionable retaliatory conduct includes not only that which affects terms and conditions of employment, but also any conduct which has a materially adverse effect on a plaintiff, irrespective of whether it is employment or workplace related." <u>Burgos-Stefanelli</u>, 410 Fed. Appx. at 246 (internal quotation marks omitted). Nonetheless, whether the action affected the terms, conditions, or privileges of employment is instructive as to whether it was material and significant. In <u>Davis v. Town of Lake Park, Fla.</u>, 245 F.3d 1232 (11th Cir. 2001), the Eleventh Circuit affirmed a district court's conclusion that a written counseling statement did not create an actionable Title VII retaliation claim. <u>See Davis</u>, 245 F.3d at 1241. The Eleventh Circuit reasoned that "courts are wisely reluctant to treat job

performance memoranda as actionable under Title VII where they do not trigger any more tangible form of adverse action such as a loss in benefits, ineligibility for promotional opportunities, or more formal discipline." Id. Here, the letter of redirection had no tangible effect on the Plaintiff's employment, and the Plaintiff offers no other reason to view the letter as "sufficiently severe and pervasive to alter . . . [the Plaintiff's] working conditions." Gowski v. Peake, 682 F.3d 1299, 1313 (11th Cir. 2012). The same is true of the PDP, which created a streamlined process to assist the Plaintiff in fulfilling her duties in a timely and proper manner. However, the recommendation of non-renewal was a materially adverse action. The Defendant's argument that this was not materially adverse because the Plaintiff ultimately chose to resign is without merit. She chose to resign in lieu of having a non-renewal on her teaching record.

Third, the Defendant argues there was no causal relationship between the alleged protected activity and alleged materially adverse actions. "[A] plaintiff simply has to demonstrate that the protected activity and the adverse action are not completely unrelated." Burgos-Stefanelli, 410 Fed. Appx. at 246 (internal quotation marks omitted). "A plaintiff satisfies this element if she provides sufficient evidence that [1] her employer had knowledge of the protected expression and [2] that there was a close temporal proximity between this awareness and the adverse . . . action." Id.

"If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." <u>Higdon v. Jackson</u>, 393 F.3d 1211, 1220 (11th Cir. 2004). A three to four month delay between the protected activity and the adverse action may be insufficient to infer causation. <u>Id.</u> ("The [Supreme] Court cited with approval decisions in which a three to four month disparity was found to be insufficient to show causal connection.").

The Plaintiff only provides evidence for a causal link between her opposition to modifying the IEPs without parental approval, and the letter of redirection and her placement in a PDP. Specifically, the Plaintiff testified that she informed Downs on August 7, 2009, that she would not modify the IEPs without parental approval. (Pl.'s Statement of Material Facts ¶ 16.) The Plaintiff establishes close temporal proximity by pointing out that this happened only days before she was issued a letter of redirection and placed in a PDP. (Pl.'s Mem. Opp'n Mot. Summ. J., at 19.)

However, the Plaintiff supplies no evidence that Downs had any knowledge of her non-IEP related complaints. In her deposition, the Plaintiff admitted that to the extent that she is alleging that someone informed Downs of the complaints, it is based on nothing "other than a guess." (Edwards Dep. 79.)  The Plaintiff also does not argue that there was a close temporal proximity between her resistance to modifying the

IEPs without parental consent and Downs' recommendation of non-renewal.[4] Consequently, the Plaintiff has only provided evidence for causation regarding the two adverse actions that the Court concluded were not material and significant. The Plaintiff cannot establish a prima facie case of retaliation.

### 3. Non-Retaliatory Reasons and Pretext

Even assuming, *arguendo*, that the Plaintiff established a prima facie case, "the employer . . . has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." Burgos-Stefanelli, 410 Fed. Appx. at 247. "The employer need not persuade the court that its proffered reasons are legitimate, as its burden is merely one of production, not proof." Id. (internal quotation marks omitted). "This intermediate burden is exceedingly light." Id. (internal quotation marks omitted). "If the employer proffers such a legitimate non-retaliatory explanation, the employee must show by a preponderance of the evidence that the legitimate reasons offered by the employer for taking the adverse action were not its true reasons." Id. "A reason is not pretextual unless it is shown both that the reason was false, and that retaliation was the real reason." Id. Ultimately, the Plaintiff must establish that the

---

[4] These two events are likely too far attenuated to support an inference of causation as per the Higdon proximity standard. The Plaintiff alleges that she voiced her opposition on August 7, 2009. (Pl.'s Statement of Material Facts ¶ 16.) Over five months later, Downs recommended the non-renewal of the Plaintiff's contract on January 15, 2010. (Id. at 52.)

protected activity was the but-for cause of the adverse employment action. See Nassar, 133 S. Ct. at 2533.

The Defendant offers three reasons for the alleged adverse actions. First, the Defendant argues that the Plaintiff failed to complete her paperwork on time. (Def.'s Statement of Material Facts ¶¶ 44, 46.) The Defendant asserts that the Plaintiff needed to complete her IEPs before the deadline even if it meant securing parental consent. (Def.'s Statement of Material Facts ¶¶ 21, 42.) The Mosley Affidavit, submitted by the Plaintiff, supports this. Mosley testified that after meeting with Downs, she was able to complete her IEPs in a timely fashion after getting parental approval. (Mosley Aff., at 2.) Furthermore, it was not just the IEPs that the Defendant argues the Plaintiff failed to complete in time. The Plaintiff was also told to create a classroom management plan by the end of the 2008-2009 school year and failed to do so. (Def.'s Statement of Material Facts ¶ 28.) Second, the Defendant alleges that the Plaintiff did not satisfy the requirements of her PDP. (Def.'s Br. Supp. Mot. Summ. J., at 19; Def.'s Statement of Material Facts ¶¶ 49-50.) Third, the Defendant alleges that it believed that the Plaintiff displayed unprofessional conduct and did not handle criticism well. (Def.'s Statement of Material Facts ¶¶ 44, 49, 51, 60.)

The Plaintiff has no evidence suggesting that these reasons are pretextual. The Plaintiff "cannot succeed by simply quarreling with the wisdom of [the] reason[s], or

showing that the decision was based on erroneous facts." <u>Burgos-Stefanelli</u>, 410 Fed.

Appx. at 247. The Plaintiff must demonstrate, by a preponderance of the evidence,

that these were not the Defendant's real reasons. The Plaintiff argues that she received

satisfactory performance reviews in the past. (Pl.'s Mem. Opp'n Mot. Summ. J., at 20.)

However, the Plaintiff does not contend that she completed her IEPs on time, satisfied

the requirements of her PDP, or dealt with criticism to the satisfaction of Downs. Even

if the Plaintiff offers justifications for the alleged shortcomings, that would only

challenge the wisdom of Downs' actions. It would not show that Downs' stated

reasons were "not what actually motivated [Downs'] conduct." <u>Combs v. Plantation</u>

<u>Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997). The Plaintiff has not demonstrated

"such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions

in the employer's proffered legitimate reasons for its action that a reasonable factfinder

could find them unworthy of credence." <u>Id.</u> Summary judgment as to the Plaintiff's

claim under section 504 of the Rehabilitation Act should be granted.

   B. <u>State Law Claims</u>

   The Plaintiff claims that the Defendant violated the Georgia Open Records Act.

"[A] custodian of public records complies with an ORA request when he grants

reasonable access to the files in his custody." <u>Felker v. Lukemire</u>, 267 Ga. 296, 299

(1996). " [A] thorough reading of the ORA makes it clear that the legislature did not

intend for a custodian of public records to comb through his files in search of documents sought by a public citizen." Id. at 298. "To the contrary, all that is required of a public records custodian is that he provide reasonable access to the files that are sought." Id. at 298-99. The Defendant argues that it made the requested records available for retrieval on December 3, 2010. (Def.'s Br. Supp. Mot. Summ. J., at 23.) This was the date the parties had agreed to. (Id.) The Plaintiff argues that the Defendant was required to make copies of the records available. The Defendant did this. The Defendant simply refused to mail them to the Plaintiff and instead instructed the Plaintiff to retrieve them. The ORA does not require mailing of the records. See O.C.G.A. § 50-18-71(e). The Plaintiff then argues, citing Wallace v. Greene County, 274 Ga. App. 776 (2005), that she may still be entitled to attorney's fees. In Wallace, the court reasoned that attorney's fees may be proper because the agency failed to contact Wallace within three days of his request to arrange a time for Wallace to retrieve the records. Id. at 783-784. Here, the Plaintiff never alleges that the Defendant failed to contact her within three days of her request to arrange the date for retrieval. Summary judgment as to the Plaintiff's Georgia Open Records Act claim should be granted.

The Plaintiff also claims that the Defendant violated the Georgia Whistleblower Act. Under the GWA, "[a] public employee who has been the object of retaliation in

violation of this Code section may institute a civil action in superior court . . . within *one year after discovering the retaliation* or within three years after the retaliation, *whichever is earlier*." O.C.G.A. § 45-1-4(e)(1) (emphasis added). Here, the suit was not filed until August 4, 2011, well over a year after the Plaintiff ceased to be an employee of Snellville Middle School. The Plaintiff argues that she was made aware that a "Non-Renewal was placed in her employment file . . . well after August 4, 2010." (Pl.'s Mem. Opp'n Mot. for Summ. J., at 25.) However, the adverse action was the recommendation of non-renewal, which occurred on January 15, 2010. (Def.'s Statement of Material Facts ¶ 52.) The Plaintiff was informed of the recommendation of non-renewal in January of 2010. (Id. ¶ 55.) The Plaintiff admits that in March of 2010 she knew her contract was not going to be renewed, which is why she resigned in April of 2010. (Pl.'s Statement of Material Facts ¶¶ 38-39.) The Plaintiff's claim is barred by the statute of limitations. Summary judgment as to the Plaintiff's claim under the Georgia Whistleblower Act should be granted.

### IV. <u>Conclusion</u>

For the reasons set forth above, the Court GRANTS the Defendant's Motion for Summary Judgment [Doc. 48].

SO ORDERED, this 30 day of September, 2013.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge